**IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA
PHILADELPHIA DIVISION**

| | |
|---|---|
| JAMES EVERETT SHELTON AND JON FREY, on behalf of themselves and others similarly situated, | |
| Plaintiffs, | |
| vs. | Case No. 2:18-cv-4375-CMR |
| DIRECT ENERGY, LP and KAA ENERGY, INC. | COMPLAINT – CLASS ACTION |
| Defendants. | |

**FIRST AMENDED CLASS ACTION COMPLAINT**

**Preliminary Statement**

1.      Plaintiffs James Everett Shelton and Jon Frey bring this action to enforce the consumer-privacy provisions of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, a federal statute enacted in 1991 in response to widespread public outrage about the proliferation of intrusive, nuisance telemarketing practices.  *See Mims v. Arrow Fin. Servs., LLC,* 132 S. Ct. 740, 745 (2012).

2.      The Plaintiffs allege that Direct Energy, LP ("Direct Energy") hired KAA Energy, Inc. ("KAA Energy") to telemarket for them and attempt to secure new customers.

3.      In violation of the TCPA, KAA Energy placed an automated telemarketing call to his cellular telephone number.  Mr. Shelton never consented to receive this call, and it was placed to him for telemarketing purposes in an attempt to generate new business for Direct Energy.

4.     Mr. Frey alleges that in violation of the TCPA, KAA Energy placed automated telemarketing calls to his residential telephone number for Direct Energy, even though Mr. Frey's number is listed on the National Do Not Call Registry. Mr. Frey never consented to receive these calls, and they were placed to him for telemarketing purposes in an attempt to generate new business for Direct Energy. While in a prior pleading Direct Energy claims that Mr. Frey invited a second call, he affirmatively terminated the first call, only to be called again by KAA Energy.

5.     Mr. Frey also alleges that the Defendants violated the Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-1 *et seq*. ("PCPL") due to their violation of Pennsylvania's Telemarketer Registration Act, 73 P.S. § 2241 *et seq*. ("PTRA")

6.     The telemarketing calls to Mr. Frey were a violation of the PTRA (a) because they used technology that made their Caller ID number a non-working number that appeared to the recipient as if the call was coming from Maryland and (b) because they were made to his residential telephone number that he had placed on the Commonwealth of Pennsylvania Do Not Call List

7.     Because telemarketing campaigns generally place calls to hundreds of thousands or even millions of potential customers *en masse*, Plaintiffs bring this action on behalf of a proposed nationwide class of other persons who received illegal telemarketing calls from or on behalf of Direct Energy.

**Parties**

8.     Plaintiff James Everett Shelton is a resident of the State of Pennsylvania and this District.

9.     Plaintiff Jon Frey is a resident of the State of Pennsylvania and this District.

2

10.     Defendant Direct Energy is headquartered in Houston, Texas. Defendant Direct Energy is engaged in substantial and not isolated business activities in the State of Pennsylvania and the United States, including, but not limited to, entering into contractual relationships and servicing the relationships with new customers that result from the telemarketing calls it directed and authorized from its vendors.

11.     Defendant KAA Energy, Inc. is headquartered in Texas with its principal place of business at 3914 Trailstone Lane in Katy, Texas 77494. Defendant KAA Energy is engaged in substantial and not isolated business activities in the State of Pennsylvania and the United States, including, but not limited to, making telemarketing calls into Pennsylvania on behalf of Direct Energy, as it did with the Plaintiffs.

**Jurisdiction and Venue**

12.     The Court has federal question jurisdiction over these TCPA claims. *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740 (2012).

13.     This Court has supplemental jurisdiction over the related state law claims as they form part of the same case or controversy. *See* 28 U.S.C. § 1367(a).

14.     Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because the illegal telemarketing calls that are the subject of this putative class action lawsuit were sent into this District.

**The Telephone Consumer Protection Act**

15.     In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing … can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

<u>The TCPA's Prohibition of Automated Telemarketing Calls</u>

16.    The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service."  *See* 47 U.S.C. § 227(b)(1)(A)(iii).  The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A).  *See* 47 U.S.C. § 227(b)(3).

17.    According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

18.    The FCC also recognized that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used."  *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, CG Docket No. 02-278, Report and Order, 18 F.C.C. Rcd. 14014, 14115 ¶ 165 (2003).

19.    In 2013, the FCC required prior express written consent for all autodialed or prerecorded telemarketing calls ("robocalls") to wireless numbers and residential lines. Specifically, it ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer:  (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.[]"

4

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991,*

27 F.C.C. Rcd. 1830, 1844 (2012) (footnotes omitted).

<u>The National Do Not Call Registry</u>

20.     Perhaps the most well-known aspect of the TCPA was the creation of the National

Do Not Call Registry. By adding a telephone number to the Registry, a consumer can indicate

their desire not to receive telephone solicitations. *See* 47 C.F.R. § 64.1200(c)(2).

21.     The TCPA and its implementing regulations prohibit the initiation of telephone

solicitations to residential telephone subscribers to the Registry. 47 U.S.C. § 227(c); 47 C.F.R.

§ 64.1200(c)(2).

**Pennsylvania's Unfair Trade Practices and**
**<u>Consumer Protection Law and Pennsylvania's Telemarketer Registration Act</u>**

22.     Pennsylvania's Telemarketer Registration Act, 73 P.S. § 2241 *et seq*. states:

No telemarketer shall take any action with the primary intent:
**(1)** to prevent the transmission of a telemarketer's name or telephone number to
any recipient of a telephone solicitation call when the equipment or service used
by the telemarketer is capable of creating and transmitting the telemarketer's
name or telephone number; or

73 Pa. Stat. Ann. § 2245.1.

23.     The PTRA also provides, "[a] violation of this act is also a violation of the act of

December 17, 1968 (P.L.1224, No.387), known as the Unfair Trade Practices and Consumer

Protection Law." 73 P.S. § 2241.6(a).

24.     In fact, the PCPL itself prohibits "any other fraudulent or deceptive conduct

which creates a likelihood of confusion or of misunderstanding." *See* 73 P.S. § 201-2(4)(xxi).

25.     Of course, that's exactly what manipulating a Caller ID does. It obfuscates the

identity of the calling party to avoid accountability.

26.     The PTRA also prohibits any call to numbers on Pennsylvania's Do Not Call list:

> No telemarketer shall initiate or cause to be initiated a telephone solicitation call to a residential telephone number of a residential telephone subscriber who does not wish to receive telephone solicitation calls and has caused his name, address and telephone number to be enrolled on a do-not-call- list maintained by the list administrator.  This prohibition shall be effective 30 days after a quarterly do-not-call list is issued by the list administrator which first contains a residential telephone subscriber's name, address and residential telephone number.

*See* 73 P.S. § 2245.2.

## **Factual Allegations**

27.     Defendant Direct Energy is a provider of energy services.

28.     To generate new clients, Direct Energy relies on telemarketing.

29.     One of the telemarketing strategies used by Defendants involves the use of automated calls to solicit potential customers.

30.     Defendants also relies on third party vendors, such as KAA Energy, to make the automated telemarketing calls in order to generate new business for Direct Energy.

Call to Mr. Shelton

31.     Mr. Shelton is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

32.     Mr. Shelton is the user of a cellular telephone number (484) 626-XXXX.

33.     Direct Energy placed an automated call to Plaintiff's cellular telephone number in on August 24, 2018.

34.     There was a distinctive "bloop" noise at the beginning of the call and a pause before a live representative came on the line.

35.     The "bloop" sound is consistent with use of a predictive dialer, which is automated dialing equipment subject to the TCPA's restrictions.

6

36.     The representative stated that they were calling on behalf of Direct Energy and that the purpose of the call was to solicit Mr. Shelton to switch energy providers to Direct Energy.

37.     At no time was KAA Energy mentioned, but Direct Energy's prior pleading with this Court (ECF No. 4) includes an affidavit from KAA Energy that states that KAA Energy made the call to Mr. Shelton.

38.     Mr. Shelton was not interested in changing energy providers, has never done business with the Direct Energy, and had not provided his written consent to receive the call.

39.     In fact, prior to this lawsuit, Mr. Shelton wrote to Direct Energy asking for any evidence of his consent to call him, which he asserted did not exist.

40.     Direct Energy failed to provide any evidence of Mr. Shelton's consent to receive the calls in response to his letter.

41.     In a prior pleading, Direct Energy claims that Mr. Shelton filled out a survey online that led to the call.

42.     Mr. Shelton denies filling out that survey.

43.     Mr. Shelton and the other call recipients were harmed by these calls.  They were temporarily deprived of legitimate use of their phones because the phone line was tied up, they were charged for the calls, and their privacy was improperly invaded.

44.     Moreover, these calls injured Mr. Shelton because they were frustrating, obnoxious, annoying, were a nuisance, and disturbed the solitude of Mr. Shelton and the proposed classes.

<u>Calls to Mr. Frey</u>

45.     Mr. Frey is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

46.     Mr. Frey received two automated calls from Direct Energy to his residential telephone number, (215) 634-XXXX, even though that telephone number was listed on the National Do Not Call Registry for more than 31 days prior to the calls at issue.

47.     Mr. Frey's number (215) 634-XXXX was also placed on the Commonwealth of Pennsylvania's Do Not Call List on September 6, 2014.

48.     On August 8, 2018, Direct Energy placed a call to Mr. Frey's residential telephone number.  The caller stated that the call was being made on behalf of Direct Energy and that the purpose of the call was to solicit him to switch energy providers to Direct Energy.

49.     Mr. Frey was not interested in changing energy providers, had never done business with the Direct Energy, and had not provided his written consent to receive the call.

50.     At no time was KAA Energy mentioned, but Direct Energy's prior pleading with this Court (ECF No. 4) includes an affidavit from KAA Energy that states that KAA Energy made the call to Mr. Frey.

51.     Shortly thereafter, the representative called Mr. Frey *again*, and continued to ask him why he didn't want to save money on his electric bill.

52.     The calls to Mr. Frey came from the number, (410) 660-7371.

53.     This is a non-working number.

54.     That number is a Maryland exchange, and KAA Energy was not making the call from Maryland.

55.     Prior to this lawsuit, Mr. Frey wrote to Direct Energy asking for any evidence of his consent to call him, which he asserted did not exist.

56.     Direct Energy failed to provide any evidence of Mr. Frey's consent to receive the calls.

57.     Mr. Frey and the other call recipients were harmed by these calls.  They were temporarily deprived of legitimate use of their phones because the phone line was tied up and their privacy was improperly invaded.

58.     Moreover, these calls injured Mr. Frey because they were frustrating, obnoxious, annoying, were a nuisance, and disturbed the solitude of Mr. Frey and the proposed class.

**Direct Energy's Liability for the Telemarketing Calls**

59.     The Federal Communication Commission ("FCC") is tasked with promulgating rules and orders related to enforcement of the TCPA. *See* 47 U.S.C. 227(b)(2).

60.     The FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *See In re Rules & Regulations Implementing the TCPA*, CC Docket No. 92-90, Memorandum Opinion and Order, 10 FCC Rcd 12391, 12397 (¶ 13) (1995).

61.     In their January 4, 2008 ruling, the FCC reiterated that a company on whose behalf a telephone call is made bears the responsibility for any violations.  *Id.* (specifically recognizing "on behalf of" liability in the context of an autodialed or prerecorded message call sent to a consumer by a third party on another entity's behalf under 47 U.S.C. § 227(b)).

62.     On May 9, 2013, the FCC confirmed this principle in a Declaratory Ruling holding that sellers such as Fidelity Security may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside

9

the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy.

28 FCC Rcd at 6588 (¶ 37) (internal citations omitted).

63.     More specifically, the May 2013 FCC Ruling held that, even in the absence of evidence of a formal contractual relationship between the seller and the telemarketer, a seller is liable for telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make the calls.  28 FCC Rcd at 6586 (¶ 34).

64.     The May 2013 FCC Ruling further clarifies the circumstances under which a telemarketer has apparent authority:

> [A]pparent authority may be supported by evidence that the seller allows the outside sales entity access to information and systems that normally would be within the seller's exclusive control, including: access to detailed information regarding the nature and pricing of the seller's products and services or to the seller's customer information. The ability by the outside sales entity to enter consumer information into the seller's sales or customer systems, as well as the authority to use the seller's trade name, trademark and service mark may also be relevant. It may also be persuasive that the seller approved, wrote or reviewed the outside entity's telemarketing scripts.  Finally, a seller would be responsible under the TCPA for the unauthorized conduct of a third-party telemarketer that is otherwise authorized to market on the seller's behalf if the seller knew (or reasonably should have known) that the telemarketer was violating the TCPA on the seller's behalf and the seller failed to take effective steps within its power to force the telemarketer to cease that conduct.

28 FCC Rcd at 6592 (¶ 46).

65.     At all relevant times, Direct Energy relied on KAA Energy to effectively operate as a marketing department exclusively telemarketing for Direct Energy.

10

66.     In fact, Direct Energy's pleading in this lawsuit states that Plaintiff Frey "received a call on his landline from a vendor representative identified as Sarah, who stated that she was calling on behalf of Direct Energy." (ECF No. 4 at *4).

67.     Similarly, Direct Energy claims "Mr. Shelton received a single phone call from Direct Energy's vendor". (ECF No. 4 at *3).

68.     In other words, KAA Energy did exactly what Direct Energy hired them to do, make automated telemarketing calls on their behalf.

69.     Direct Energy knowingly and actively accepted business that originated through the illegal telemarketing calls from KAA Energy.

70.     In fact, Direct Energy accepted the business from illegal calls from the Defendants, even though it had previously received complaints alleging that the third parties working on its behalf were violating the TCPA.

71.     Furthermore, Direct Energy has previously been named as a Defendants in TCPA class action lawsuits for the calling conduct of its vendors.

72.     By hiring a company to make calls on its behalf, Direct Energy "manifest[ed] assent to another person . . . that the agent shall act on the principal's behalf and subject to the principal's control" as described in the Restatement (Third) of Agency.

73.     Moreover, Direct Energy maintained interim control over the actions of KAA Energy.

74.     For example, Direct Energy had absolute control over whether, and under what circumstances, it would accept a customer.

75.     Direct Energy also informed KAA Energy what states it would accept customers from and, as a result, directed the geographic location of their telemarketing.

76.     Direct Energy also reviewed and approved the scripts that were used for the telemarketing calls.

77.     Direct Energy also had day-to-day control over KAA Energy's actions, including the ability to prohibit it from using an ATDS to contact potential customers of Direct Energy.

78.     Direct Energy also gave interim instructions to KAA Energy by providing the volume of calling and contracts it would purchase.

79.     Furthermore, KAA Energy had exclusive access to transfer potential customers over to Direct Energy's proprietary verification systems, as they did with the Plaintiffs who were investigating the source of these illegal calls.

80.     Finally, the May 2013 FCC Ruling states that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *Id.* at 6592-593 (¶ 46).  Moreover, evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 (¶ 46).

**Class Action Allegations**

81.     As authorized by Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure, Plaintiffs sue on behalf of other persons or entities throughout the United States.

82.     The proposed classes are tentatively defined as:

ATDS CLASS:

All persons within the United States: (a) to whom Defendants and/or a third party acting on their behalf, made one or more non-emergency telephone calls; (b)

12

promoting Direct Energy's products or services; (c) to their cellular telephone number; (d) using an automatic telephone dialing system or an artificial or prerecorded voice; and (e) at any time in the period that begins four years before the date of filing this Complaint through the date of class certification.

DNC CLASS:

All persons within the United States: (a) whose telephone numbers were listed on the National Do Not Call Registry for more than 30 days, and who, (b) at any time within the four years prior to the filing of this Complaint through the date of class certification, (c) received more than one telemarketing call within any twelve-month period from, or on behalf of, Defendants.

PCPL CLASS:

All Commonwealth of Pennsylvania residents (a) to whom Defendants and/or a third party acting on their behalf, made one or more telephone calls; (b) manipulating the Caller ID number or to a residential number enrolled on the Commonwealth of Pennsylvania's do-not-call- list maintained by the list administrator; (c) at any time in the period that begins six years before the date of filing this Complaint through the date of class certification.

83.    The Plaintiff Shelton is a member of the ATDS Class, and the Plaintiff Frey is a member of the DNC class and PCPL class.

84.    Excluded from the classes are the Defendants, any entities in which the Defendants has a controlling interest, the Defendants' agents and employees, any Judge to whom this action is assigned, and any member of the Judge's staff and immediate family.

85.    Class members are identifiable through phone records and phone number databases that will be obtained through discovery.

86.    The potential class members number at least in the thousands.  Individual joinder of these persons is impracticable.

87.    There are questions of law and fact common to Plaintiffs and the proposed classes, including:

a.    Whether the Defendants used an ATDS to send telemarketing calls;

     b.    Whether the Defendants manipulated the Caller ID to send telemarketing calls;

     c.    Whether the Defendants placed telemarketing calls without obtaining the recipients' valid prior express written consent;

     d.    Whether the Defendants placed more than one call within a 12-month period to numbers on the National Do Not Call Registry;

     e.    Whether the Defendants' TCPA violations were negligent, willful, or knowing; and

     f.    Whether the Plaintiffs and the class members are entitled to statutory damages because of the Defendants' actions.

88.    Plaintiffs' claims are based on the same facts and legal theories as class members, and therefore are typical of the class members' claims.

89.    Plaintiffs are adequate representatives of the classes because their interests do not conflict with the classes' interests, they will fairly and adequately protect the classes' interests, and they are represented by counsel skilled and experienced in litigating TCPA class actions.

90.    The Defendants' actions are applicable to the classes and to Plaintiffs.

91.    Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy.  The only individual question concerns identification of class members, which will be ascertainable from records and databases maintained by Defendants and others.

92.     The likelihood that individual class members will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case, and given the small recoveries available through individual actions.

## Legal Claims

### Count One:
### Violation of the TCPA's provisions
### prohibiting autodialer calls to cell phones

93.     Plaintiffs incorporate the allegations from all previous paragraphs as if fully set forth herein.

94.     The Defendants violated the TCPA by (a) initiating a telephone call using an automated dialing system or prerecorded voice to telephone numbers assigned to a cellular telephone service, or (b) by the fact that others caused the initiation of those calls on its behalf. *See* 47 C.F.R. 64.1200(a)(1)(iii); 47 U.S.C. § 227(b)(1).

95.     The Defendants' violations were negligent and/or knowing.

### Count Two:
### Violation of the TCPA's Do Not Call provisions

96.     Plaintiff Frey incorporates the allegations from all previous paragraphs as if fully set forth herein.

97.     The Defendants violated the TCPA by (a) initiating telephone solicitations to persons and entities whose telephone numbers were listed on the Do Not Call Registry, or (b) by the fact that others made those calls on its behalf.  *See* 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)(2).

98.     The Defendants' violations were negligent and/or knowing.

**Count Three:**
**Violation of the PCPL**

99.     Plaintiff Frey incorporates the allegations from all previous paragraphs as if fully

set forth herein.

100.    A violation of the PTRA is an automatic violation of the PCPL.

101.    The Defendants violated the PTRA with respect to the call to Mr. Frey because

they used technology that made their Caller ID number a non-working number that appeared to

the recipient as if the call was coming from Maryland. The Defendants also violated the PTRA

by calling Mr. Frey's residential number, which was on the Pennsylvania Do Not Call List.

102.    The Defendants may have further violated the PTRA, which can be identified

through discovery. For example the PTRA provides, "it shall be unlawful for any telemarketer to

initiate a telephone call to or receive a telephone call from a consumer in connection with the

purchase of consumer goods or services, unless the telemarketer or the telemarketing business

which employs the telemarketer is registered with the Office of Attorney General… at least 30

days prior to offering for sale consumer goods or services through any medium." 73 P.S. § 2241

§ 3(a)-(b).

103.    The Plaintiff Frey seeks statutory damages of $100 for each violation of the

PCPL.

**<u>Relief Sought</u>**

Plaintiffs request the following relief:

A.     That the Court certify the proposed classes;

B.     That the Court appoint Plaintiffs as class representatives;

E.     That the Court appoint the undersigned counsel as counsel for the classes;

F.      That the Court enter a judgment permanently enjoining the Defendants from engaging in or relying upon telemarketing, or, alternatively, from engaging in or relying upon telemarketing that violates the TCPA;

G.      That, should the Court permit Defendants to engage in or rely on telemarketing, it enter a judgment requiring them to adopt measures to ensure TCPA compliance, and that the Court retain jurisdiction for a period of six months to ensure that the Defendants complies with those measures;

H.      That the Court enter a judgment awarding any other injunctive relief necessary to ensure the Defendants' compliance with the TCPA;

I.      That Defendants or anyone acting on its behalf be immediately restrained from altering, deleting or destroying any documents or records that could be used to identify class members;

J.      That the Court enter a judgment awarding Plaintiffs and all class members statutory damages of $500 for each violation of the TCPA and $1,500 for each knowing or willful violation;

K.      That the Court enter a judgment awarding Plaintiffs and all class members statutory damages of $100 for each violation of the PCPL;

L.      That the Court enter an order awarding the Plaintiffs reasonable attorneys' fees and costs; and

M.      That the Plaintiffs and all class members be granted other relief as is just and equitable under the circumstances.

**Plaintiffs request a jury trial as to all claims of the complaint so triable**

Plaintiff,
By Counsel,

17

Dated: November 9, 2018      By:   /s/ *Anthony Paronich*
                                      Anthony Paronich
                                      Email:  anthony@broderick-law.com
                                      BRODERICK & PARONICH, P.C.
                                      99 High St., Suite 304
                                      Boston, Massachusetts  02110
                                      Telephone:  (508) 221-1510
                                      *Pro Hac Vice*

                                      _____

Clayton S. Morrow
Email: csm@consumerlaw365.com
Morrow & Artim, PC
304 Ross Street, 7th Floor
Pittsburgh, PA 15219
Telephone: (412) 281-1250

Brian K. Murphy (0070654)
Jonathan P. Misny (0090673)
Murray Murphy Moul + Basil LLP
1114 Dublin Road
Columbus, OH  43215
(614) 488-0400
(614) 488-0401 facsimile
murphy@mmmb.com
misny@mmmb.com
*Pro Hac Vice*

Matthew P. McCue
The Law Office of Matthew P. McCue
1 South Avenue, Suite 3
Natick, Massachusetts 01760
(508) 655-1415
mmccue@massattorneys.net
*Subject to Pro Hac Vice*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and accurate copy of the foregoing was filed

through the Court's CM/ECF System on November 9, 2018, and a copy was automatically

distributed to all counsel of records through that System.

_____