UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JAMES EVERETT SHELTON,[1] et al., | ) ) ) | Case No. 1:19CV0081 |
| Plaintiffs, | ) ) | |
| v. | ) ) | MAGISTRATE JUDGE DAVID A. RUIZ |
| DIRECT ENERGY, L.P., et al., | ) ) ) | |
| Defendants. | ) ) | MEMORANDUM AND ORDER |

The plaintiff James Everett Shelton[1] ("Shelton") has filed an amended class action complaint ("complaint") against defendants Direct Energy, L.P. ("Direct Energy"), and KAA Energy, Inc. ("KAA"), alleging violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, and Pennsylvania's Telemarketer Registration Act ("PTRA"), 73 P.S. § 2241 *et seq.* (R. 10.) The suit was originally filed in the Eastern District of Pennsylvania on October 9, 2018 (R. 1), and transferred to the Northern District of Ohio on January 8, 2019. (R. 28.)

The amended complaint consists of three counts, alleging: 1) violation of the TCPA's provisions prohibiting autodialer calls to cellular phones; 2) violation of the

---

1 As originally filed, there was a second named plaintiff, Jon Frey, in the complaint. (R. 1.) After Direct Energy filed its motion to dismiss, Frey was dismissed from the case. (R. 24; *see also* R. 52, PageID #: 395 n.1.) Thus, any references to Frey in the motion to dismiss (*see, e.g.*, R. 13-1, PageID #: 137-139, 141-144) are moot, and will not be addressed.

TCPA's Do Not Call provisions; and, 3) violation of the PTRA. (R. 10, PageID #: 124-125.)

Currently before the court are Direct Energy's motion to dismiss the amended complaint (R. 13), and KAA's motion for judgment on the pleadings (R. 43). Plaintiff has filed an opposition to each filing (R. 46), and defendants have each filed a reply brief (R. 52, 53).

## I. KAA'S MOTION FOR JUDGMENT ON THE PLEADINGS

Defendant KAA has filed a motion for judgment on the pleadings, but relies principally on the arguments raised by Direct Energy in its motion to dismiss. (R. 43, PageID #: 318.) KAA raises no independent grounds in support of its motion, and asserts that the standard for addressing its motion is identical to that which applies to Direct Energy's motion. *Id.* In ruling on a motion for judgment on the pleadings under Rule 12(c), the court considers all factual allegations of the complaint as true. *Lindsay v. Yates*, 498 F.3d 434, 438 (6th Cir. 2007); *McKamey v. Roach*, 55 F.3d 1236, 1237 (6th Cir. 1995); *United States v. Moriarty*, 8 F.3d 329, 332 (6th Cir. 1993). Where a Rule 12(c) motion raises what is essentially a Rule 12(b)(6) defense by challenging the legal basis of the complaint, the analytical framework for the motion for judgment on the pleadings mirrors that used under Rule 12(b)(6). *Amersbach v. City of Cleveland*, 598 F.2d 1033, 1038 (6th Cir. 1979). Thus, in ruling on KAA's motion, the court will consider the arguments raised in Direct Energy's motion, expressly adopted by KAA. *See generally* R. 43, R. 53.

2

## II. DIRECT ENERGY'S MOTION TO DISMISS

Direct Energy filed a motion to dismiss the amended complaint pursuant to Civil Rule 12(b)(1), based on lack of subject-matter jurisdiction, and pursuant to Rule 12(b)(6), for failure to state a claim upon which relief can be granted. (R. 13, PageID #: 132.) These two provisions of Rule 12 involve differing burdens. The court addresses jurisdiction first, which is the main focus of Direct Energy's arguments concerning Shelton.

### A. Standard under Rule 12(b)(1)

Civil Rule 12(b)(1) allows for dismissal of a claim for "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). In ruling on such a motion, the court must determine whether it has jurisdiction over the subject matter. *Moir v. Greater Cleveland Reg'l Transp. Auth.,* 895 F.2d 266, 269 (6th Cir. 1990) (citing *Bell v. Hood*, 327 U.S. 678, 682 (1946)). When the defendant challenges subject matter jurisdiction through a motion to dismiss, the plaintiff bears the burden of establishing jurisdiction. *Nichols v. Muskingum College*, 318 F.3d 674, 677 (6th Cir. 2003); *Hedgepeth v. Tennessee*, 215 F.3d 608, 611 (6th Cir. 2000) (citing *Moir,* 895 F.2d at 269).

The court can look outside the pleadings to resolve a factual attack in a Rule 12(b)(1) motion to dismiss. Once a defendant has made a factual attack[2] through a

---

[2] A factual attack is not a challenge to the sufficiency of the allegations of the complaint, but a challenge to the factual existence of subject matter jurisdiction.

Rule 12(b)(1) motion, "the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." *Savage v. Glendale Union H.S., Dist. No. 205*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003), *cert. denied,* 541 U.S. 1009 (2004); *see also Gentek Bldg. Prod., Inc. v. Sherwin-Williams Co.,* 491 F.3d 320, 330 (6th Cir. 2007); *Nichols,* 318 F.3d at 677 (permissible for court to review evidence outside pleadings). In the context of a Rule 12(b)(1) motion, however, this supplemental evidence does not convert the motion into a motion for summary judgment. *Rogers v. Stratton Indus., Inc.,* 798 F.2d 913, 917 (6th Cir. 1986).

### B. Standard under Rule 12(b)(6)

Civil Rule 12(b)(6) allows for dismissal of a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In *Ashcroft v. Iqbal*, the Supreme Court summarized the new "plausibility" standard for dismissal under Rule 12(b)(6) as follows:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely

---

*Maldonado Parra v. Gonzales*, No. 4:04CV920, 2006 WL 2463665, at *3 (N.D. Ohio Aug. 21, 2006) (citing *Walters v. Leavitt,* 376 F.Supp.2d [746], 752 (E.D. Mich. 2005)).

4

> consistent with" a defendant's liability, it "stops short of the line
> between possibility and plausibility of 'entitlement to relief.'"

*Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly,* 550 U.S. 554 (2007)). In other words,"[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 556 U.S. at 678 (citing *Twombly,* 550 U.S. at 555).

A motion to dismiss for failure to state a claim upon which relief can be granted is procedural, and tests the sufficiency of the complaint. *Miller v. Currie,* 50 F.3d 373, 377 (6th Cir. 1995). The court must construe the complaint in the light most favorable to the plaintiff, and, for the purposes of this motion, accept all factual allegations as true. *Erickson v. Pardus,* 551 U.S. 89, 93-94 (2007); *Central States Pension Fund v. Mahoning Nat'l Bank,* 112 F.3d 252, 255 (6th Cir. 1997). However, the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 555).

The Supreme Court stated that "when a complaint adequately states a claim, it may not be dismissed based on a district court's assessment that the plaintiff will fail to find evidentiary support for his allegations or prove his claim to the satisfaction of the factfinder." *Twombly,* 550 U.S. at 563 n.8. The function of the court in ruling on such a motion is not to weigh the evidence, nor to appraise the credibility of witnesses. *Miller,* 50 F.3d at 377. Rather, the court is simply to determine "whether a complaint states a plausible claim for relief." *Iqbal,* 556 U.S.

at 679. With the above standards for dismissal in mind, the court will address the motion to dismiss.

### C. Direct Energy's Arguments

The motion to dismiss relies on two arguments: (1) there is no injury in fact to support Article III standing because Shelton signed up as a Direct Energy customer as a result of the calls (R. 13-1, PageID #: 140-141), and (2) Shelton is a serial TCPA litigator who has suffered no legal injury (*id.* at PageID #: 144-146.)

#### 1. Injury in Fact

The motion asserts that Shelton suffered no injury-in-fact to support Article III standing. (R. 13-1, PageID #: 140-141.) A challenge to a party's standing is a jurisdictional challenge. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561 (1992); *Caudill v. Wells Fargo Home Mortg., Inc.,* No. CV 5:16-066, 2016 WL 3820195, at *1 (E.D. Ky. July 11, 2016). The jurisdiction of the federal courts is limited by Article III of the Constitution to adjudicating actual Cases and Controversies. *Lujan,* 504 U.S. at 559. Standing is essential to the exercise of jurisdiction, and is a "threshold question . . . [that] determin[es] the power of the court to entertain the suit." *Crawford v. Roane,* 53 F.3d 750, 753 (6th Cir. 1995), *cert. denied,* 517 U.S. 1121 (1996) (quoting *Warth v. Seldin,* 422 U.S. 490, 498 (1975)).

The Supreme Court has established that "the irreducible constitutional minimum of standing contains three elements." *Lujan,* 504 U.S. at 560-561. *See, e.g.*, *Imhoff Inv., LLC v. Alfoccino, Inc.,* 792 F.3d 627, 631 (6th Cir. 2015); *Mey v. Venture Data, LLC,* 245 F. Supp.3d 771, 775 (N.D. W.Va. 2017) (citing *Spokeo, Inc.*

6

*v. Robins,* 136 S.Ct. 1540, 1547 (2016), as revised (May 24, 2016)); *Caudill,* 2016 WL 3820195, at *1 (citing *Lujan*). First, the plaintiff must have suffered an "injury in fact," a concrete injury to a legally protected interest. *Id.* Second, there must be a causal connection between the injury and the challenged conduct, "fairly traceable" to the defendant. *Id.* Finally, it must be "likely" that the injury will be redressed by a favorable decision. *Id.* "The party invoking federal jurisdiction bears the burden of establishing these elements." *Lujan,* 504 U.S. at 561. Only the first element is disputed here.

Direct Energy's first argument is that Shelton "cannot demonstrate any concrete or particularized injury sufficient to establish an injury in fact" because he signed up to be a Direct Energy customer, therefore he sought to benefit from the call "demonstrating that the calls were not unwarranted, nuisances, invasive, costly, or inconvenient." (R. 13-1, PageID #: 141.) The amended complaint alleges otherwise. (R. 10, PageID #: 116, ¶¶ 43-44.) In any event, this argument is unsupported by any case authority, and the court rejects it as a legal basis for dismissing the action on jurisdictional grounds.

2. Legal Injury

In addition, Direct Energy claims that Shelton is a serial TCPA litigator "manipulating the TCPA to trap companies that respond to his requests to be called," who has suffered no legal injury. (R. 13-1, PageID #: 144.) Direct Energy argues that some courts have found that TCPA suits have been abused by serial litigants, and thus the court should apply "close scrutiny on the issue of standing in

7

light of *Spokeo*." *Id.*, citing *Morris v. Unitedhealthcare Ins. Co.*, No. 4:15CV638, 2016 WL 7115973, at *6 (E.D. Tex. Nov. 9, 2016), *adopted by*, 2016 WL 7104091 (E.D. Tex. Dec. 6, 2016) (citing *Spokeo*, 136 S.Ct. 1540). The defendant contends that "Shelton brazenly attempts to manufacture a TCPA claim out of a call he previously consented to and welcomed upon receipt." *Id.* at 145. Direct Energy argues further that Shelton suffered no injury contemplated by the TCPA. *Id.* at 146. Direct Energy claims that: "The entire case rests on a single call that Mr. Shelton consented to participate in and during which he enthusiastically chose to become a customer of Direct Energy." *Id.* The defendant argues that, because Shelton is a professional plaintiff attempting to create a TCPA claim where none exists, the court should dismiss his claim under Rule 12(b)(1). *Id.*

This court has recognized that when Congress enacted the TCPA, "it did so in part to protect consumers from the 'nuisance, invasion of privacy, cost, and inconvenience that autodialed and prerecorded calls generate.'" *Meredith v. United Collection Bureau, Inc.*, No. 1:16CV1102, 2018 WL 1782854, at *3 (N.D. Ohio Apr. 13, 2018) (citing *Caudill,* 2016 WL 3820195); *see also Parchman v. SLM Corp.*, 896 F.3d 728, 738-739 (6th Cir. 2018) ("the primary purpose of the TCPA was to protect individuals from the harassment, invasion of privacy, inconvenience, nuisance, and other harms associated with unsolicited, automated calls"). The Sixth Circuit has found that "such harm, in the context of a TCPA claim, is sufficient to establish a concrete harm." *Meredith*, 2018 WL 1782854, at *3 (citing *Imhoff Inv.,* 792 F.3d at 632).

8

Several of the cases cited by Direct Energy rely on *Spokeo* (*see, e.g.*, R. 13-1, PageID #: 140, 144), which involved an action under the Fair Credit Reporting Act of 1970 ("FCRA"), not under the TCPA. *Spokeo*, 136 S. Ct. at 1544. In *Spokeo*, the Supreme Court overruled the Ninth Circuit's conclusion that the plaintiff's alleged violations of his statutory rights alone under the FCRA were sufficient to satisfy the injury-in-fact requirement of Article III. *Spokeo*, 136 S. Ct. at 1546, 1550. The plaintiff had alleged that defendant provided inaccurate information about him, but did not allege a further injury resulting from that information. *Id.* at 1544, 1546, 1550. The Court held that: "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo,* 136 S. Ct. at 1548 (quoting *Lujan,* 504 U.S., at 560).

This court in *Meredith* addressed the issue of concrete injury and standing under the TCPA in light of *Spokeo*:

> Though *Imhoff* predates *Spokeo*, district courts in the Sixth Circuit have consistently held that it remains good law because it addressed the very issue raised by *Spokeo*: whether a plaintiff has suffered a sufficiently concrete harm. *See, e.g., Caudill,* 2016 WL 3820195, at *2 (plaintiff had standing in a TCPA case because time plaintiff spent reviewing junk email was time "it could have spent on other more productive business activities"); *Hamza v. Dunhams Athleisure Corp.,* No. 16-11641, 2017 WL 1077895, at *3 (E.D. Mich. Mar. 22, 2017) ("Defendant's argument [against standing] is at odds with the vast majority of decisions rendered by courts considering whether a concrete injury-in-fact has occurred when a plaintiff makes invasion of privacy allegations based on calls or texts received that the plaintiff has pled violated the TCPA.").

9

> Meredith has done more than allege a technical violation of the TCPA. Her Complaint alleges that the calls invaded her privacy and annoyed her.

*Meredith*, 2018 WL 1782854, at *3 (discussing *Imhoff*, 792 F.3d 627). *See also Susinno v. Work Out World Inc.*, 862 F.3d 346, 351 (3d Cir. 2017) (finding concrete harm where plaintiff alleged nuisance and invasion of privacy, "the very harm that Congress sought to prevent"); *Van Patten v. Vertical Fitness Grp.*, LLC, 847 F.3d 1037, 1043 (9th Cir. 2017) (Congress, in TCPA, identified unsolicited contact as a concrete harm); *Cabiness v. Educational Fin. Sols., LLC*, No. 16CV01109, 2016 WL 5791411, at *5 (N.D. Cal. Sept. 1, 2016) (TCPA plaintiff alleged sufficient concrete injury for standing; in addition to alleging a statutory violation, also alleged specific harms); *Caudill*, 2016 WL 3820195, at *2 (alleged specific harms such as invasion of privacy).

In addition to alleging a statutory violation under the TCPA, Shelton's complaint alleged specific harms. *See, e.g.*, *Meredith*, 2018 WL 1782854, at *3 (calls invaded privacy and were annoying); *Cabiness*, 2016 WL 5791411, at *5 (calls caused stress and anxiety). Shelton alleged he was "temporarily deprived of legitimate use of [his phone] because the phone line was tied up, [he] was charged for the call[], and [his] privacy was improperly invaded," plus the call was "frustrating, obnoxious, annoying, . . . a nuisance, and disturbed [his] solitude." (R. 10, Am.Compl., PageID #: 110, 116, ¶¶ 3, 43, 44.) The court finds that the amended complaint sufficiently alleges concrete harms, in addition to the alleged statutory violation, to satisfy the injury-in-fact requirement for Article III standing. Direct

10

Energy also contends that Shelton's complaint should be dismissed because he is a serial litigator improperly manipulating the TCPA. (R. 13-1, PageID #: 144-146.) The defendant relies on *Stoops v. Wells Fargo* for the proposition that "a consumer who files TCPA actions as a business" should lack standing to pursue his claims. (R. 13-1, PageID #: 144, quoting *Stoops v. Wells Fargo Bank, N.A.*, 197 F.Supp.3d 782, 805 (W.D. Pa. June 24, 2016)). The defendant asserts that Shelton "is a professional TCPA plaintiff" who has filed approximately thirty-seven TCPA lawsuits in recent years. *Id.* at 145.

      The court finds *Stoops* distinguishable on its facts. In *Stoops*, the court applied the Third Circuit's "zone of interest" test, and found that a plaintiff who had purchased thirty-five cell phones "with the hope of receiving calls from creditors for the sole purpose of collecting statutory damages" was not among the sorts of interests that the TCPA was designed to protect. *Stoops,* 197 F.Supp.3d at 788, 805. The factual circumstances here are quite different; there is no evidence in the record that Shelton owned more than the single phone on which he alleges he received the calls at issue. *See generally* R. 10, PageID #: 115, ¶ 32-33; R. 46-1, Shelton decl., ¶ 8; *see also Mey,* 245 F. Supp. 3d at 783-784 (declining to follow *Stoops*); *Evans v. National Auto Div., LLC,* No. CV 15-8714, 2016 WL 4770033, at *3 (D. N.J. Sept. 13, 2016) (distinguishing *Stoops*). The defendant also cites *dicta* in *Morris v. Unitedhealthcare Ins. Co.*, in support of the serial litigator argument; however, the court in *Morris* ruled, on a motion for summary judgment, that defendant had proffered no evidence that the telephone number at issue was

11

maintained purely for the purpose of filing TCPA lawsuits, and found plaintiff therein had standing. *Morris,* 2016 WL 7115973, at *6.

The fact that Shelton has filed other TCPA suits does not deprive him of standing, nor does that fact bar this suit. *See, e.g.*, *Abramson v. Oasis Power LLC,* No. 2:18-CV-00479, 2018 WL 4101857, at *5 (W.D. Pa. July 31, 2018), *adopted by*, 2018 WL 4095538 (W.D. Pa. Aug. 28, 2018) (rejecting argument that plaintiff's "prolific history of filing TCPA lawsuits" demonstrates a lack of an injury-in-fact); *see generally Charvat v. EchoStar Satellite, LLC*, 630 F.3d 459, 461 (6th Cir. 2010) (noting that plaintiff had filed thirteen lawsuits under the TCPA).

In addition, Direct Energy asserts that Shelton consented to the call by completing an online survey indicating interest. (R. 13-1, PageID #: 135, 145-146.) Shelton "unequivocally denies having visited the unidentified website that KAA Energy asserts is the basis for calling him." (R. 46, PageID #: 352; R. 46-1, Shelton decl., ¶ 10; *see also* R. 10, PageID #: 116, ¶¶ 38-42.) He asserts that when a robocall to a cell phone is made for telemarketing purposes, the consent required by the TCPA is "prior express written consent." *Id.*, quoting 47 U.S.C. § 227(b)(1). This court has ruled that "express consent . . . is not an element of a plaintiff's prima facie case but is an affirmative defense for which the defendant bears the burden of proof." *Rodriguez v. Premier Bankcard, LLC,* No. 3:16CV2541, 2018 WL 4184742,

at *3 (N.D. Ohio Aug. 31, 2018) (quoting *Van Patten*, 847 F.3d at 1044).  Thus, it is not an issue to be determined on a motion to dismiss the amended complaint.[3]

## III.  CONCLUSION

For the aforementioned reasons, the court DENIES Direct Energy's motion to dismiss (R. 13).  Plaintiff Shelton has standing to pursue his claims.  The court also DENIES KAA Energy's motion for judgment on the pleadings (R. 43), which is based on the same theories, for the same reasons.

IT IS SO ORDERED.

s/ David A. Ruiz<br>
David A. Ruiz<br>
United States Magistrate Judge

Date:  August 27, 2019

---

[3] The court notes that discovery is ongoing on the issue of consent, but as of this date, defendants have not provided evidence of consent.  *See, e.g.*, R. 49, R. 57.